*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

In re:

    Denise C. Janac,                                      Lead Case No. 08-35792

        Debtor.

-------------------------------------------------------- X

Neal D. Frishberg, Plaintiff,

  -against-                                          Adv. Proc. No. 08-09051

Denise C. Janac, Defendant.

-------------------------------------------------------- X

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE

Appearances:

| | |
|---|---|
| Neal D. Frishberg | Warren Greher |
| Fabricant Lipman & Frishberg | Greher Law Offices, P.C. |
| One Harriman Square | 1161 Little Britain Road |
| P.O. Box 60 | Suite B |
| Goshen, New York 10924 | New Windsor, New York 12553 |
| *Plaintiff, Pro Se* | *Attorney for Defendant* |

**CECELIA MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

      On this motion for summary judgment, the Court decides whether an attorney's allegations that his client lied to him about being a victim of domestic violence can support an argument that the client committed fraud upon the attorney, where the damages represent the attorney's unpaid fees.  The Court grants the Defendant's motion for summary judgment, because the Plaintiff could not establish under any theory or under any of the facts alleged, even if proven at trial by a preponderance of

the evidence, that the Defendant misrepresented that she would pay Plaintiff for the representation; that Defendant did not intend to pay Plaintiff for the representation at the time they signed the retainer agreement; that Plaintiff justifiably relied on Defendant's allegations of domestic violence alone in accruing about $54,000 in legal bills; or that any alleged misrepresentation was the proximate cause of Plaintiff's damages.

In an adversary proceeding to except a debt from discharge, a plaintiff who is an attorney cannot defeat a motion for summary judgment with the bare allegation that he will present witnesses who will testify that the former client is a liar; rather, he must show that at the time the agreement was made, the former client had the intent not to pay him pursuant to their agreement. Among the numerous sources of legal authority cited herein, the Court especially is guided by Brown v. Ables (*In re* Ables), No. 03-00618-8W7, Adv. Pro. No. 03-188, 2003 Bankr. LEXIS 1231 (M.D. Fla. Sept. 30, 2003); Fed. R. Civ. P. 56; Fed R. Bankr. P. 7056; Crawford v. Dep't of Investigation, No. 07-4793, 2009 LEXIS 10256 (2d Cir. May 13, 2009); United States v. Dothard, 666 F.2d 498 (11th Cir. 1982); Helin v. Suit (*In re* Jeffrey and Cynthia Suit), 2009 Bankr. LEXIS 907 (Bankr. E.D. Tenn. Apr. 6, 2009); and Little Family Farms Corp. v. Mortensen (*In re* Mortensen), 2009 Bankr. LEXIS 765 (Bankr. S.D. Iowa Mar. 17, 2009).

If Defendant had moved to dismiss the proceeding pursuant to Fed. R. Civ. P. 12(b)(6), the motion would likely have been granted, because the Plaintiff failed to meet his burden to allege all the elements of false pretenses, false representations, and actual fraud.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. The determination as to the dischargeability of a particular debt is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## Background

On April 18, 2008, Defendant filed a petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (hereafter, the "Bankruptcy Code"). On July

14, 2008, Plaintiff, an attorney, commenced the present adversary proceeding *pro se*, arguing that the debt Defendant owed him was incurred on account of false representations, and the discharge should therefore be denied pursuant to 11 U.S.C. § 727.[1]  Specifically, Plaintiff argued that Defendant, his former client, obtained legal services from him by making false representations to him about being a victim of an alleged incident of domestic violence.  He claims that he would not have provided legal services if he had not believed the Defendant.

Defendant filed an answer on Oct. 8, 2008.[2]

At a hearing on October 23, 2008, the Court expressed concern about the merits of Plaintiff's complaint, and directed Plaintiff to file an amended complaint.  Plaintiff filed the amended complaint on Nov. 5, 2008, in which he recounted in explicit detail Defendant's alleged representations to him of the incident of domestic violence.  ECF Docket No. 5 (hereafter, the "Amended Complaint").  Plaintiff also alleged in the Amended Complaint that he and Defendant entered into a retainer agreement. In the Amended Complaint, he seeks relief under Bankruptcy Code § 523(a)(2), which addresses the dischargeability of debts incurred as a result of false pretenses, false representations, and actual fraud.  He continues to seek relief under the ambiguous "Bankruptcy Code § 727."

Defendant filed an answer to the amended complaint on Nov. 21, 2008.

At a hearing on Dec. 9, 2008, the Court set a schedule for preparation, drafting, and argument of a motion for summary judgment.

In the following months, counsel to Defendant represented to the Court that he was having difficulty contacting his client.  He did not file a motion for summary judgment according to the schedule set by the Court.

Eventually, counsel to Defendant advised the Court that Defendant had resumed contact with him, and would move for summary judgment.  Defendant moved for

---

[1] The Court was left to guess at which provision of Bankruptcy Code § 727 would provide relief to the Plaintiff.  This section of the Bankruptcy Code is a broad list of causes and procedures that support the denial and revocation of a discharge. Bankruptcy Code § 727(a) generally provides that the court will not grant an individual a discharge if the debtor engages in certain conduct related to the integrity of the bankruptcy case itself, such as transferring property, destroying records, and refusing to obey a court order.

[2] This proceeding was characterized by delay.  Plaintiff and Defendant's counsel agreed to numerous adjournments on the record at court hearings and in filings on CM/ECF.

summary judgment and dismissal of the case on April 6, 2009. At a hearing held on April 7, 2009, the Court set June 9, 2009, as the hearing date for the motion; later, the hearing date was adjourned to June 30, 2009.

At the time of oral arguments on the motion for summary judgment, the adversary proceeding had been pending more than nine months.

At the oral arguments on June 30, 2009, Plaintiff made the following statements not contained in Amended Complaint or his response to the Defendant's motion for summary judgment:

> 1. He met the Defendant when Defendant consulted an attorney in Plaintiff's office building with respect to the refinancing of Defendant's house, Transcript of the June 30, 2009, Hearing (ECF Docket No. 12; hereafter, "Tr.") at p. 5, l. 7-19;
>
> 2. Limited discovery is available in family court proceedings in New York State, Tr. at 8, l. 4-6;
>
> 3. Plaintiff did not have notice of the opposition's witnesses in the family court proceeding, Tr. at 6, l. 8-10;
>
> 4. Plaintiff would not have commenced the adversary proceeding if he had been paid in full by Defendant, Tr. at 11, l. 9-15.

At oral arguments, counsel to Defendant asserted that discovery in family court proceedings might include a demand for witnesses. Tr. at 8, l. 3-6.

The Court takes these statements from the oral argument into consideration as part of the motion for summary judgment, and will consider each in the light most favorable to Plaintiff, consistent with summary judgment standards.

### B. Rules and Legal Standards

**1. Motion for summary judgment**

Fed. R. Bank. P. 7056 provides that Fed. R. Civ. P. 56 applies in adversary proceedings. Fed. R. Civ. P. 56 governs motions for summary judgment, and provides in relevant part:

> **(e) Affidavits; Further Testimony.**
>
> > **(1) In General.** A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with

> the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> **(2) Opposing Party's Obligation to Respond.** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

"Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Jacobowitz v. The Cadle Co., 309 B.R. 429, 435 (S.D.N.Y. 2004). "[T]he plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3] The moving party is not required to present evidence negating its opponent's claim; rather, the movant may meet its burden by pointing out the absence of evidence to support the nonmoving party's case, and the opposing party bears the burden to show a genuine issue of fact for trial. *See id.*; *see also* Jacobowitz v. The Cadle Co. (*In re* Jacobowitz), 309 B.R. 429, 435 (S.D.N.Y. 2004) ("A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor … To defeat summary judgment, the nonmovant must go beyond the pleadings and 'do more than simply show that there is some metaphysical doubt as to the material facts' "). "[T]he court resolves all ambiguities and draws all permissible factual inferences against the movant." *Jacobowitz*, 309 B.R. at 435.

The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* FED. R. CIV. P. 56(e)(1)*;* Crawford v. Dep't of Investigation, No. 07-4793, 2009 LEXIS 10256 (2d Cir. May 13, 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor,

---

[3] The text of Rule 56(c) has been revised since the opinion in *Celotex* was rendered.

and conclusory allegations"); Raskin v. The Wyatt Co., 125 F.3d 55 (2d Cir. 1997) (affirming award of summary judgment in favor of defendant; court noted "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and rejected an expert report as inadmissible). In general, evidence must be relevant to be admissible, and may be excluded if it is cumulative, confusing, or unfairly prejudicial. Hearsay and character evidence generally are inadmissible under the Federal Rules of Evidence.[4]

### 2. Exception from discharge on account of fraud

A creditor seeking to except a debt from discharge under Bankruptcy Code § 523(a) must prove the necessary elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Consistent with the fresh start policy under the Bankruptcy Code, "exceptions to discharge must be strictly and literally construed against the creditor and liberally construed in favor of the honest debtor." *In re* Spar, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994) (citation omitted).

Section 523(a)(2)(A) of the Bankruptcy Code excepts debts from discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). Generally speaking, Bankruptcy Code § 523(a)(2)(A) contemplates fraud that involves moral turpitude. *See* 4 Collier on Bankruptcy ¶ 523.08[1][d] at 523-44.9 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) ("[False pretenses and false representations] are those that in fact involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient."); *see also* Law Offices of Donna Buttler v. Bonebo (*In re* Bonebo), 345 B.R. 42 (Bankr. D. Conn. 2006) (finding no intent to deceive where client made partial payment to attorney, both before and after signing a promissory note).

---

[4] See FED. R. EVID. 402 (relevant evidence is admissible); 403 (relevant evidence may be excluded if probative value is substantially outweighed by danger of unfair prejudice or confusion of issues, or is cumulative); 404(b) (evidence of other crimes or wrongs is not admissible to prove the character of a person in order to show action in conformity therewith).

Courts sometimes analyze proceedings under Bankruptcy Code § 523(a)(2)(A) under the analysis of "the five fingers of fraud": 1. the debtor made a false representation, 2. knowing it to be false at the time it was made, 3. with intent to deceive the creditor; and 4. the creditor justifiably relied on the misrepresentation, and 5. sustained damages that were proximately caused by the false representation.  *See* Citibank (South Dakota), N.A. v. Olwan (*In re* Olwan), 312 B.R. 476, 482 (Bankr. E.D.N.Y. 2004); Shearson Lehman Hutton v. Schulman (*In re* Schulman), 196 B.R. 688 (Bankr. S.D.N.Y. 1996).

Other courts consider the torts of false pretenses, false representation, and actual fraud individually, analyzing whether the elements of each claim have been established by a preponderance of the evidence.  *See* Varble v. Chase (*In re* Chase), 372 B.R. 133, 137 (Bankr. S.D.N.Y. 2007).  Following this approach, this Court will consider the three torts individually.

### Actual fraud

The elements of a claim of actual fraud are the "five fingers of fraud," set forth above.

"As a rule, one who undertakes to perform an obligation, such as to pay a debt, impliedly represents that he intends to perform.  If the objection to dischargeability is based upon an unperformed promise, the proponent must show that the debtor did not intend to perform or had no reasonable basis to believe that she could perform when she made the promise."  Aldus Green Co. v. Mitchell (*In re* Mitchell), 227 B.R. 45, 50-51 (Bankr. S.D.N.Y. 1998) (citations omitted).  *See also In re* D'Atria, 128 B.R. 71, 76 (Bankr. S.D.N.Y. 1991) ("In order for the aggrieved party to the contract to prevail on a claim for fraud in such case, there must also be proof that the other party had no intention of honoring the obligation imposed under the contract when it was signed"); Little Family Farms Corp. v. Mortensen (*In re* Mortensen), 2009 Bankr. LEXIS 765 (Bankr. S.D. Iowa March 17, 2009) (holding that where owner and contractor frequently discussed progress of construction project and advancement of money by owner to contractor, and contractor misappropriated some of the money, debt was not excepted

from discharge under Bankruptcy Code § 523(a)(2) because owner did not show that contractor had intent not to perform when the agreement was made).

The plaintiff must establish that his damages were proximately caused by the alleged misrepresentation. For example, in Helin v. Suit (*In re* Suit), 2009 Bankr. LEXIS 907 (Bankr. E.D. Tenn. April 6, 2009), a plaintiff was the co-signor of a loan, and the defendants misrepresented to plaintiff that they owned the security for the loan and executed a promissory note to plaintiff for the amount of the loan. The bankruptcy court in *Suit* did not except plaintiff's claim from discharge under Bankruptcy Code § 523(a)(2): "Proximate cause is something more than 'speculation as to what the creditor might have done in hypothetical circumstances … Without 'a direct link between the alleged fraud and the creation of the debt, there is no proximate cause and the element is not satisfied." *Helin*, 2009 Bankr. LEXIS 907 at *12-*13.

<u>Allegations in the case at bar</u>

In his amended complaint and reply papers, Plaintiff asserts that Defendant lied about being abused by her husband in order to induce Plaintiff to provide legal services to her. *See* Amended Complaint. Plaintiff also alleges that they entered into a written retainer agreement, in which Debtor would obtain the agreed-upon $10,000 retainer by refinancing her personal residence. Amended Complaint at 2, ¶11. Plaintiff submits a copy of the retainer agreement, signed by himself and the Defendant. ECF Docket No. 10, p. 1, ¶2, Exh. A (hereafter, the "Response")*.*

In the Amended Complaint, Plaintiff describes an incident of domestic violence, which he claims is the version of the incident that Defendant told him. He argues that he relied on Debtor's version of the events in agreeing to take her case. Plaintiff contends that Debtor lied, or misrepresented the events, for the purpose of inducing Plaintiff to take her case, and that these misrepresentations caused him damages.

Defendant moved for summary judgment, and for any relief the Court deems appropriate. Counsel to the Defendant notes in an affirmation accompanying the motion:

> Statements made by the defendant/debtor to the plaintiff were true and correct when made. No Court has made a determination that the statements were false, fraudulent or, in fact, misleading.

> There is no indication that the sole reason that the plaintiff represented the defendant was that he relied upon said statements.  It is clear that he represented the defendant because he though he was going to get paid for that representation.

ECF Docket No. 8, Attorney Affirmation in Support of Motion for Summary Judgment, ¶¶9-10 (hereafter, the "Motion").  In these allegations, the Defendant points to the lack of evidence supporting the elements of a false representation, intent, justifiable reliance, and proximate cause.

The only material allegation that Plaintiff disputes is that there was no written retainer agreement, and submits a copy of a retainer agreement signed by himself and Defendant.  Response at 1, ¶2, Exh. A.  The Court is satisfied that a contractual relationship existed between the parties.

Plaintiff agrees with Defendant that the judge in the family court proceeding did not find that the Defendant lied or misrepresented any facts to the court or to any other parties, and that the Defendant failed to establish a *prima facie case* in that matter.  Motion, Statement of Facts Pursuant to Local 7056-1, ¶¶ 6-8; Response at 2, ¶4.

With regard to evidence submitted in support of his opposition, Plaintiff states that he will produce witnesses at trial who will testify that Defendant is a "flim-flam artist."[5]  Such witnesses will include people who overheard Defendant talking at a party, and past boyfriends and an ex-husband who will testify that Debtor made false allegations of domestic violence against them.  This is the sum of the evidence that Plaintiff would present at trial.

Plaintiff states, "I would not have spent $54,000.00 worth of time and expenses in the Family Court matter had I known Debtor's representations were false."  ECF Docket No. 10, p. 5, ¶26.

While Plaintiff might have been persuaded to take the Defendant's case by believing her representation of events, the relevant representation in this matter of nondischargeability is Defendant's representation that she would pay Plaintiff.  The damages in this proceeding are about $54,000 in unpaid legal bills.  The parties' relationship was governed by a retainer agreement.  Plaintiff must prove that Defendant had intent to not pay him at the time they entered into the retainer agreement.

---

[5] Character evidence is generally inadmissible in civil cases.  See FED. R. EVID. 404(a), 608(b).

Upon review of the amended complaint and the Plaintiff's reply to the motion for summary judgment, the Court finds that Plaintiff has not met his burden to establish the existence of the essential elements on which he will bear the burden of proof at trial. Plaintiff has not presented any admissible evidence or testimony demonstrating that, when the retainer agreement was executed, the Defendant misrepresented that she would pay him for legal services, or that she intended to deceive him by promising to pay him for the work he would do when she knew she would not pay him. Plaintiff has failed to show how any misrepresentation regarding the incident of the domestic violence is relevant to her failure to pay his fee, as she promised to do in the retainer agreement.

Plaintiff has failed to show that Defendant had intent to not pay him at the time the agreement was made. Plaintiff represented the Defendant in an agreement for money. Under the authority of *Aldus Green Co.*, *In re D'Atria* and *Little Family Farms Corp.*, cited above, in order to prevail on an action to hold a debt nondischargeable on account of fraud, Plaintiff was required to show that the Defendant did not intend to perform when the agreement was made. In lieu of offering admissible evidence to establish the element of intent to defraud, Plaintiff makes repeated assertions that Debtor is a liar and a "flim-flam artist," and makes vague promises that he will offer witnesses to testify in support of this allegation. Assuming such evidence would be in any way relevant or admissible under the Federal Rules of Evidence at a trial on the claims before this Court, Plaintiff has not offered so much as a subpoena to show that the witnesses exist, are willing and able to testify, and are within the subpoena power of this Court. Plaintiff may not rely on hearsay and speculation on what he might have done to carry his burden on summary judgment. *See Jacobowitz* and *Crawford*, cited above.

Further, the Court does not see how testimony from witnesses that Defendant is a liar or a "flim-flam artist" would be relevant, or not unduly prejudicial or confusing, in considering whether Defendant misrepresented that she would pay Plaintiff at the time the parties executed the retainer agreement, or whether Defendant had the intent to not pay him. The proposed testimony would likely make for a spectacle that will mirror the family court proceeding that underlies this conflict. Plaintiff does not dispute

Defendant's statement that the judge in the family court proceeding did not find that the Defendant lied or misrepresented any facts to the court or to any other parties, and that the Defendant failed to establish a *prima facie* case. Motion, Statement of Facts Pursuant to Local 7056-1, ¶¶ 6-8; Response at 2, ¶4.[6]

The Court notes that the evidence that Plaintiff submitted with his amended complaint consists of a picture of Defendant with a black eye; a handwritten and barely legible narrative by Defendant's ex-husband that is not notarized; some phone records; and the decision in the family court proceeding. None of this evidence persuades the Court that there is a triable issue of fact regarding whether Defendant signed the retainer agreement with intent to defraud the Plaintiff.

At the hearing on the motion for summary judgment, Plaintiff testified that the Defendant was introduced to him while consulting another attorney about refinancing her house. This statement suggests that the Defendant had reasonable grounds to believe that she would get the cash to pay Plaintiff through the refinancing, which was the arrangement she made with Plaintiff. At the hearing held in this proceeding on Dec. 9, 2008, Plaintiff stated that Defendant paid him $100 per month for two or three months pursuant to a payment plan. Plaintiff has not offered admissible evidence to support a finding by this Court that Defendant intended to keep all of the money from the refinancing of her home, instead of paying Plaintiff as she promised.

Further, Plaintiff has failed to show that he justifiably relied on the representations of abuse in accumulating legal costs of about $54,000. The alleged misstatements took place over the course of a family court proceeding that culminated in a trial. The Court rejects as not credible Plaintiff's assertion that he justifiably went to trial having no idea of the identities of witnesses that would testify against his client, what they would say, and what other evidence would be presented. His decision to either forgo discovery or disregard its fruits in favor of total reliance on his client's version of events was a professional decision that will defeat a finding of justifiable

---

[6] In a Decision and Order dated March 23, 2007, the Hon. Debra J. Kiedaisch held, "The court finds that petitioner failed to meet her burden of proof and that her testimony, as well as that of her daughter and beautician, to be less than credible." Amended Complaint, Exh. C., 2. The Court interprets this holding to not constitute a finding that Defendant lied during the family court proceeding. The family court judge found no specific instance of Defendant "lying."

reliance for purposes of excepting a debt from discharge, even if the Court could find any nexus between the alleged misrepresentation of domestic violence and the resulting debt.

The Court emphasizes that Plaintiff utterly failed to meet his burden to produce any evidence on the motion for summary judgment that would establish the elements of justifiable reliance and proximate cause of his damages. Plaintiff failed to submit any evidence of his actual representation of Defendant other than the retainer agreement and the final decision in the family court proceeding. Plaintiff did not submit any billing records that might describe the services he rendered in the family court proceeding that were allegedly prompted by the statements of Defendant, such as client conferences, settlement discussions with his adversary, legal research on the cause of action, due diligence and preparation for trial, or a motion for discovery and depositions. With regard to the preparation for the trial, Plaintiff stated at the hearing on the motion for summary judgment that he "sort of" remembered asking the family court judge if he could depose the Defendant's husband. Tr. at 7, lines 17-18. This dim recollection hardly persuades the Court that the Defendant's statements of abuse were the proximate cause of the Plaintiff's damages.

Further, Plaintiff has failed to establish that he has witnesses to present at trial. He states that at trial, he will produce "third parties such as the Debtor's former boyfriends and others who observed the Debtor utter falsehoods [whose testimony will demonstrate] that she is in effect a flim-flam artist …" ECF Docket No. 9, ¶16. Plaintiff fails to offer the names and addresses of these undisclosed third parties, a copy of a subpoena to testify or appear for a deposition in connection with the adversary proceeding, a contact letter to the third parties, or any other admissible evidence to show that the parties exist, are willing or able to testify, or even within the subpoena power of the court.[7] Plaintiff's attempt to prove something that is almost entirely irrelevant and certainly insufficient to state a claim under Bankruptcy Code § 523(a)(2) falls short.

---

[7] Plaintiff states that Debtor's ex-husband, who Plaintiff asserts will testify at trial, is named Robert Matthews.

Plaintiff cannot meet his burden on summary judgment by speculating on what he might have done if he had believed something other than what Defendant told him about the abuse, or by proposing to offer hearsay and character evidence to show that Defendant is a liar or a con artist. The Court is guided by United States v. Dothard, 666 F.2d 498 (11th Cir. 1982). In *Dothard*, the defendant was charged with making a false statement on an application to the United States Army Reserves, and the prosecution presented evidence of the defendant's previous acts of not telling the truth: lying to a driver's license examiner, possessing stolen credit cards, and failing to report his Guard enlistment to his probation officer. The prosecutor admitted to the trial judge that he was trying to show that the defendant "lied and his mode of conduct is lying and concealing things and not telling the truth."

The appellate court found that the trial court erred in admitting the evidence, and reversed the conviction: "[The prosecutor's closing argument] constitutes an impermissible attempt to demonstrate the accused's bad character to prove that he acted in conformity therewith in perpetrating the charged offense. Rule 405(b) prohibits such evidence because it is inherently prejudicial." *Dothard*, 666 F.2d at 505.

Similarly, in the case at bar, Plaintiff opposes the motion by saying he intends to present a group of witnesses, mostly former boyfriends and an ex-husband, who will say that Plaintiff is a "flim-flam artist" who lied about being abused by them. The proposed evidence of previous allegations of abuse is irrelevant to proving whether Defendant intended to pay Plaintiff.

Plaintiff's proposed evidence that Defendant lied about being an attorney and knowing music stars can only be offered to show that Defendant has a propensity to lie, and must be rejected as inadmissible hearsay and character evidence. The purpose of this offered evidence is confusing and unduly prejudicial to the Defendant. The issue is whether Defendant intended to pay Plaintiff his legal fees when she entered the retainer agreement, not whether she has a propensity to tell lies.

The Court grants the Defendant's motion for summary judgment. Summary judgment is appropriate because the Defendant has pointed to the Plaintiff's failure to establish the elements of his claim, including a misrepresentation that Defendant would pay Plaintiff, and Plaintiff has failed to present evidence relevant to establishing such a

misrepresentation and the necessary intent to deceive, as well as justifiable reliance and proximate cause. The proceeding could have just as legitimately been dismissed for failure to state a claim upon which relief may be granted.

The Court is persuaded by Brown v. Ables (*In re* Ables), Adv. Pro. No. 03-188, 2003 Bankr. LEXIS 1231 (M.D. Fla. Sept. 30, 2003). In that case, the plaintiffs were attorneys who represented the debtor, Ables, in his adoption of a child. Ables signed the adoption petition, which misrepresented that he was a blood relation of the birth mother. Eventually, the birth mother set aside the adoption. Ables' ex-wife sued the attorneys, who in turn sued Ables for contribution and fraud, claiming that their actions in the adoption proceedings were based on Ables' misrepresentation. The attorneys sought to have the bankruptcy court declare that the debt arising from any recovery on their third party claim against Ables was not dischargeable under 11 U.S.C. § 523(a)(2)(A). *Ables*, 2003 Bankr. LEXIS 1231 at *5-*7.

The bankruptcy court noted that the attorneys would meet the requirements of Bankruptcy Code § 523(a)(2)(A) if the Debtor had misrepresented that a retainer check "was in the mail" but really did not exist. *See, Ables*, 2003 Bankr. LEXIS 1231 at *11. The court noted that there must be a direct link between the alleged fraud and the debt. *Ables*, 2003 Bankr. LEXIS 1231 at *12-*13. In *Ables*, "the fraudulent act was the Debtor's statement on the petition for adoption that he was related to the birth mother … . The fraud was directed at the court and the birth mother …" *Ables*, 2003 Bankr. LEXIS 1231 at *14.

Similarly, in the case at bar, Defendant spoke to Plaintiff, but there is no direct link between the alleged fraud, lying about being abused, and the debt, the fees owing to Plaintiff. Even if Plaintiff took the case because he believed Debtor, the fact that they entered a retainer agreement for money shows that theirs was a relationship in which Plaintiff expected to be paid by Defendant. He has alleged no false representation by Defendant about being willing and able to pay. Plaintiff's statement that he would not have put $54,000 of work into the case if he had known the statements of abuse were false is immaterial, because the relevant representation in this proceeding is Defendant's representation that she would pay Plaintiff. The Court grants summary judgment in favor of the Defendant on the claim of actual fraud.

Due to the tortured procedural history of this adversary proceeding, the Court emphasizes that the *Ables* matter was decided on a motion for summary judgment. The bankruptcy court noted that the plaintiff attorneys relied on the state court judgment of fraud on the court in making their case. The bankruptcy court held that there was no evidence of the debtor's intent to defraud the attorneys, and stated, "As a matter of law, the Court finds that the direct link between the debt and the fraud in this case is insufficient to meet the requirements of section 523(a)(2)(A)." *Ables*, 2003 Bankr. LEXIS 1231 at *14.

### False pretenses and false representations

Plaintiff notes that Defendant's motion for summary judgment presents an analysis of "the five fingers of fraud," and argues that the Court may not decide the claims of false pretenses and false representations on this motion. The Court notes that Defendant acknowledges all three causes of action in her affidavit accompanying the motion, and Plaintiff does not challenge Defendant's assertion that Plaintiff thought he would get paid for the representation. Bankruptcy courts commonly limit the analysis of fraud under Bankruptcy Code § 523(a)(2) to the five fingers of fraud. The Court will not require a second motion for summary judgment, where Plaintiff failed to carry his burden with regard to elements common to actual fraud and the other claims.

The elements of a claim of false pretenses are: 1. an implied misrepresentation or conduct by defendant; 2. that the defendant promoted knowingly and willingly; 3. that created a contrived and misleading understanding of the transaction on the part of the plaintiff; 4. which wrongfully induced the plaintiff to extend money or credit. *See* Varble v. Chase (*In re* Chase), 372 B.R. 133, 137 (Bankr. S.D.N.Y. 2007).

The elements of a claim of false representations are: 1. defendant made a false or misleading statement; 2 with intent to deceive; 3. in order for the plaintiff to turn over money or property to the defendant. *See Varble*, 372 B.R. at 137.

With regard to the claim of false pretenses, no party has alleged any implied representations; the parties agree that the representations of abuse were expressly made. As noted above, the relevant misrepresentation in this proceeding is that Defendant would pay Plaintiff, and Plaintiff has not argued that Defendant's promise to

pay him was a misrepresentation.  Therefore, an element of this claim has not been established.  The Court grants summary judgment in favor of the Defendant on this claim.

Even if Debtor's repeated assertions of abuse to her attorney were false and comprised a pattern of misleading conduct for purposes of false pretenses, it cannot be argued that such conduct caused the Plaintiff damages.  Plaintiff was harmed by Defendant's failure to pay his legal fee.  If Defendant's allegations were true, and she still failed to pay the fee, Plaintiff's damages would be exactly the same.  If Defendant had prevailed in the family court proceeding, and she still failed to pay the fee, Plaintiff's damages would be exactly the same.  Any alleged false pretense did not give rise to the debt.  *See* Sandak v. Dobrayel (*In re* Dobrayel), 287 B.R. 3, 24 (Bankr. S.D.N.Y. 2002) (Hardin, J.) ("[H]ad [Defendant] abandoned the project for any reason in August 1998, prior to any of his conduct which this Court has found to be deceitful, [Plaintiff's] breach of contract damage claim of $35,000 to complete the project would have been precisely the same").

With regard to the claim of false representations, as noted above, Plaintiff has not argued that Defendant's promise to pay him was a misrepresentation, made with intent to deceive.  The Court grants summary judgment in favor of the Defendant on this claim.

The Court notes that, in his amended complaint, Plaintiff seeks denial of the Debtor's discharge pursuant to Bankruptcy Code § 727.  He then launches into a detailed account of the first days of the representation and Debtor's version of the incident of domestic violence.  Plaintiff does not argue in any detail why the Defendant should be denied a discharge of all of her debts, and he limits his prayer for relief to an order "declaring that the Debt owed by the Debtor to Plaintiff is not dischargeable pursuant to 11 USC 523 (a)(2)."  The Court finds that Plaintiff has not prosecuted a denial of discharge beyond a single boilerplate recitation, and grants summary judgment in favor of Defendant on this matter.  *See* First Am. Bank v. Bodenstein (*In re* Bodenstein), 168 B.R. 23 (Bankr. E.D.N.Y. 1994) (court dismissed complaint objecting to discharge, where creditor failed to carry its burden of proof).

## **Conclusion**

Therefore, the Court grants Defendant's motion for summary judgment, and the adversary proceeding is dismissed.  The Court concludes that Plaintiff has not met his burden to show that Defendant misrepresented her intent to pay him for legal services at the time the retainer agreement was executed, with intent to deceive the Plaintiff, and that any alleged misrepresentation was the proximate cause of Plaintiff's damages.

Defendant is directed to submit an order consistent with this decision.


Dated: Poughkeepsie, New York
       July 16, 2009

/s/ Cecelia Morris
The Hon. Cecelia Morris
U.S. Bankruptcy Judge